[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-11476
Non-Argument Calendar

_____

Agency No. A216-275-064

GANESH BAHADUR-CHHETRI,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(February 6, 2020)

Before JORDAN, NEWSOM and BLACK, Circuit Judges.

PER CURIAM:

Ganesh Bahadur-Chhetri, a native and citizen of Nepal who entered the United States without inspection in February 2018, seeks review of the Board of Immigration Appeals' (BIA) final order affirming the Immigration Judge's (IJ) denial of his September 2018 application for asylum, withholding of removal, and Convention Against Torture (CAT) relief.  Bahadur-Chhetri asserts the IJ and BIA[1] erred in denying asylum because (1) the record compels a finding that he suffered past persecution; and (2) the IJ and BIA erred by failing to consider the proper standards for a well-founded fear of future persecution, and the record compels a finding that he had a well-founded fear of future persecution.  He also contends the IJ and BIA erred in denying withholding of removal and CAT relief.  After review,[2] we deny the petition.

---

[1]  Because the BIA agreed with the IJ's reasoning, we review the decisions of both the IJ and the BIA.  *See Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001) (stating we "review only the [BIA's] decision, except to the extent that it expressly adopts the IJ's opinion. Insofar as the [BIA] adopts the IJ's reasoning, we will review the IJ's decision as well." (citation omitted)).

[2] Factual determinations are reviewed under the substantial evidence test, which requires us to "view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1026-27 (11th Cir. 2004) (en banc).  We "must affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* at 1027 (quotations omitted).  To reverse factual findings, we must find that the record not only supports reversal, but compels it. *Id.*

## I.  DISCUSSION

*1.  Asylum*

An applicant for asylum must meet the Immigration and Nationality Act's definition of a refugee.  8 U.S.C. § 1158(b)(1).  The definition of "refugee" includes:

> any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1101(a)(42)(A).  "To establish asylum eligibility, the petitioner must, with specific and credible evidence, demonstrate (1) past persecution on account of a statutorily listed factor, or (2) a 'well-founded fear' that the statutorily listed factor will cause future persecution."  *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1257 (11th Cir. 2006).

*1.  Past Persecution*

Bahadur-Chhetri argues the IJ's finding, and the BIA's affirmance of the finding, that he did not suffer past persecution in Nepal is not supported by substantial evidence.  We have stated "persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and that mere harassment does not amount to persecution."  *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1231 (11th Cir. 2005) (quotations and brackets omitted)

3

(concluding evidence of bombing of petitioner's workplace, menacing telephone calls, and threats made to the petitioner did not compel finding of past persecution).  In determining whether a petitioner has suffered past persecution, the factfinder must consider the cumulative effects of the incidents.  *Delgado v. U.S. Att'y Gen.*, 487 F.3d 855, 861 (11th Cir. 2007).  "Minor physical abuse and brief detentions do not amount to persecution."  *Kazemzadeh* v. *U.S. Att'y Gen.*, 577 F.3d 1341, 1353 (11th Cir. 2009) (determining an arrest, interrogation, five-hour beating, and 4-day detention, without any physical harm, did not compel a finding of past persecution).  However, attempted murder is persecution regardless of whether the petitioner is physically injured.  *Sanchez Jimenez v. U.S. Att'y Gen.*, 492 F.3d 1223, 1233 (11th Cir. 2007) (concluding intentionally being shot at in a moving car multiple times qualifies as past persecution).  Likewise, "[a] credible death threat by a person who has the immediate ability to act on it constitutes persecution regardless of whether the threat is successfully carried out."  *Diallo v. U.S. Att'y Gen.*, 596 F.3d 1329, 1333-34 (11th Cir. 2010) (concluding the record compelled a finding of persecution based on the cumulative effect of a minor beating, an 11-hour detention, and a death threat by the same soldiers who had already killed the petitioner's brother).  Furthermore, serious physical injury is not required to prove past persecution "where the petitioner demonstrates repeated threats combined with other forms of serious mistreatment."  *De Santamaria v.*

4

*U.S. Att'y Gen.*, 525 F.3d 999, 1009 (11th Cir. 2008) (determining the petitioner suffered past persecution after she was assaulted, her groundskeeper was murdered for refusing to disclose her whereabouts, and she was kidnapped and beaten with the butts of guns).

Substantial evidence supports the IJ's and BIA's finding that Bahadur-Chhetri failed to demonstrate past persecution. Bahadur-Chhetri's sworn declaration and testimony established that over the course of about two months he was beaten twice, received four threatening phone calls, and received one threatening letter.[3] The physical attacks involved punches, kicks, and one beating with sticks, rather than any deadly weapons, and left Bahadur-Chhetri with a bloody nose, scratches, swelling, and bruises, but no lasting injuries. While he also received verbal death threats prior to and after the physical attacks, the abuse here is not as severe as in *De Santamaria*, where the petitioner was kidnapped, her groundskeeper was murdered for refusing to reveal her whereabouts, and was beaten with the butts of guns. *See De Santamaria*, 525 F.3d at 1009. Further, although his friend stated the Maoists had planned to murder Bahadur-Chhetri during the second attack, Bahadur-Chhetri did not testify or present any evidence compelling a conclusion the Maoists ever attempted to murder him. Unlike in

---

[3] The IJ concluded that Bahadur-Chhetri had testified credibly and sufficiently corroborated his claim.

*Diallo*, the record also does not establish the Maoists had the immediate ability to carry out any of their death threats or that the letter and phone calls constituted credible threats, rather than mere harassment or intimidation. *See Diallo*, 596 F.3d at 1333-34. Cumulatively, although the evidence might permit a finding of past persecution, it does not compel that finding. *See Kazemzadeh*, 577 F.3d at 1353. Accordingly, we deny the petition as to this issue.

2. *Future Persecution*

Bahadur-Chhetri contends the IJ and BIA erred by failing to consider the proper standards for a well-founded fear of future persecution, and that the record compels a finding that he had a well-founded fear of future persecution. A well-founded fear of persecution may be established by showing (1) past persecution that creates a presumption of a "well-founded fear" of future persecution; (2) a reasonable possibility of being singled out for persecution that cannot be avoided by relocating within the subject country, if such relocation would be reasonable; or (3) a pattern or practice in the subject country of persecuting members of a group of which the petitioner is a part such that his fear of persecution is reasonable. 8 C.F.R § 208.13(b)(1), (2), (3)(i).

To establish eligibility for asylum, an applicant must show that he is unable to avail himself of the protection of his home country. *Lopez v. U.S. Att'y Gen.*, 504 F.3d 1341, 1345 (11th Cir. 2007). If the asylum applicant alleges persecution

6

by a private actor, rather than the government, failure to seek protection within his home country is generally fatal to his claim. *Id.*; *see Ayala v. U.S. Att'y Gen.*, 605 F.3d 941, 950 (11th Cir. 2010). The failure to seek protection in the home country is excused, though, if the applicant "convincingly demonstrates that [home-country] authorities would have been unable or unwilling to protect" him, such that he could not rely on them. *Ayala*, 605 F.3d at 950.

Unless the persecution is by the government or is government-sponsored, a petitioner who cannot demonstrate past persecution has the burden of showing it would not be reasonable to relocate in his home country. 8 C.F.R § 208.13(b)(3)(i), (ii). In determining the reasonableness of relocation, "agency regulations provide that the [IJ] and BIA should consider the factors set forth in 8 C.F.R. § 1208.16(b)(3)." *Jeune*, 810 F.3d at 805. These factors include, but are not limited to, "whether the applicant would face other serious harm in the place of suggested relocation; any ongoing civil strife within the country; administrative, economic, or judicial infrastructure; geographical limitations; and social and cultural constraints, such as age, gender, health, and social and familial ties." 8 C.F.R § 1208.16(b)(3). "These factors may or may not be relevant, depending on all the circumstances of the case, and are not necessarily determinative of whether it would be reasonable for the applicant to relocate." *Id.* We have upheld a requirement the persecution be "country-wide" and have held that "it is not

7

unreasonable to require a refugee who has an internal resettlement alternative in his own country to pursue that option before seeking permanent resettlement in the United States, or at least to establish that such an option is unavailable." *Mazariegos v. U.S. Att'y Gen.*, 241 F.3d 1320, 1327 (11th Cir. 2001).

Bahadur-Chhetri advances multiple arguments on this issue, and we address them in turn.

### a. Persecution by Government Officials

As an initial matter, for the first time in this petition for review, Bahadur-Chhetri contends that both the IJ and BIA incorrectly applied the well-founded fear test for persecution by private actors, even though his persecutors were members of a faction that now constitutes the government of Nepal. We lack jurisdiction to consider this argument because Bahadur-Chhetri never argued to the BIA that it or the IJ should have considered that the Maoists who attacked him were acting in an official governmental capacity. *See Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250 (11th Cir. 2006) (stating if a petitioner has failed to exhaust his administrative remedies by failing to raise a claim before the BIA, we lack jurisdiction to consider the claim). Instead, he argued the record established that the government was unable or unwilling to protect him, citing the standard for private-actor persecution, and submitted that the police's failure to act on his complaint was "indicative of [the] government's unwillingness to control the

8

Maoists." *See Lopez*, 504 F.3d at 1345; *Ayala*, 605 F.3d at 950. Because Bahadur-Chhetri never brought to the attention of the BIA his argument that his persecutors should be considered government officials, it is unexhausted. *See Amaya-Artunduaga*, 463 F.3d at 1250.

### b. Reasonableness of Relocation Factors

Relying on *Arboleda v. U.S. Attorney General*, 434 F.3d 1220 (11th Cir. 2006), Bahadur-Chhetri asserts the IJ and BIA failed to mention the necessary factors for determining reasonableness of relocation under 8 C.F.R. § 208.13(b)(3), which constitutes reversible error. In *Arboleda*, the BIA had presumed past persecution, putting the burden on the government to show that the petitioner could reasonably relocate within his home country, and then concluded that internal relocation was reasonable because the persecuting gang did not operate nationwide. *Id.* at 1222, 1224. We determined the BIA erred in failing to consider whether internal relocation would be reasonable for the petitioner even if the persecutors did not operate countrywide. *Id.* at 1226. We held the BIA's failure to mention any of the other reasonableness factors listed in the regulations constituted reversible error. *Id.*

In *Jeune v. U.S. Attorney General*, the petitioner had failed to prove past persecution and therefore bore the burden of proving that it would not be reasonable for him to relocate. 810 F.3d 792, 805 (11th Cir. 2006). We

9

determined that, though the BIA's order did not recite the specific reasonableness factors listed in 8 C.F.R § 1208.16(b)(3),[4] it clearly evidenced its awareness of the factors and of the reasonableness requirement by citing to our decision in *Arboleda*, which focused on the need to determine the reasonableness of relocation and to consider the regulatory factors in doing so. *Id.* at 805-06. Moreover, we noted the petitioner, in his brief to the BIA, offered no argument as to which reasonableness factors were relevant in his case, did not identify any evidence showing that relocation was unreasonable, and did not explain how the relocation factors would support an argument that relocation was unreasonable. *Id.* As a result, we held the BIA's citation to *Arboleda* was enough to show it had properly considered the reasonableness of the petitioner's relocation. *Id.* at 806.

The IJ's and BIA's failure to explicitly mention the reasonableness of relocation factors listed in 8 C.F.R. § 208.13(b)(3) does not constitute reversible error. Unlike the petitioner in *Arboleda*, Bahadur-Chhetri failed to establish past persecution and thus bore the burden of showing that it would not be reasonable to relocate within Nepal. *See Arboleda*, 434 F.3d at 1224; 8 C.F.R. § 208.13(b)(3)(i). However, although he cited the factors, Bahadur-Chhetri failed to offer any argument as to how any of those reasonableness factors were relevant in his case,

---

[4] The 8 C.F.R. § 1208.16(b)(3) reasonableness of relocation factors within the withholding of removal regulations are identical to the factors contained in 8 C.F.R. § 208.13(b)(3) within the asylum regulations.

present any evidence that relocation would be unreasonable, or explain how any of

the factors would support an argument that relocation was unreasonable. *See*

*Jeune*, 810 F.3d at 805-06. Although neither the BIA nor the IJ cited to a case that

specifically mentioned the reasonableness factors, the IJ stated Bahadur-Chhetri

bore the burden of proving relocation was unreasonable and cited to *Mazariegos*,

which mainly concerns the countrywide requirement for relocation but also

discusses the reasonableness of relocation. Given Bahadur-Chhetri's failure to

meet his burden of proof, this analysis was enough to show the IJ and BIA

properly considered the reasonableness of relocation. *See Jeune*, 810 F.3d at 806.

### c. *Objective and Subjective Fear*

Bahadur-Chhetri argues that neither the IJ nor the BIA considered whether

his fears were subjectively genuine and objectively reasonable, the proper

standards for making the well-founded fear of persecution determination. *See*

*Silva v. U.S. Att'y Gen.*, 448 F.3d 1229, 1236 (11th Cir. 2006) (stating to establish

eligibility for asylum based on a well-founded fear of future persecution, the

petitioner must prove that he has a "subjectively genuine and objectively

reasonable" fear of persecution because of a protected ground). The IJ and BIA

did not err in failing to discuss whether Bahadur-Chhetri had an objective and

subjective fear because they found that Bahadur-Chhetri failed to show the police

were unable to protect him and that relocation was unreasonable, as discussed

11

below.  Therefore, the IJ and BIA did not need to make an explicit finding about

his subjective and objective fear, as they found his claim of a well-founded fear of

persecution failed for other reasons.  *See Mazariegos*, 241 F.3d at 1327 (holding a

petitioner must establish that internal location would be unreasonable to establish a

well-founded fear); *Lopez*, 504 F.3d at 1345 (holding a petitioner must show he is

unable to avail himself of the protection of his home country to establish a well-

founded fear).

### d. Police Protection

Bahadur-Chhetri asserts the police's inaction regarding his first police report

demonstrates their unwillingness to protect him and justifies his nonreporting of

the second attack.  The record might compel a finding that the Nepali police were

unable or unwilling to protect Bahadur-Chhetri.  The police assured Bahadur-

Chhetri that they would find and punish his attackers after the first attack, and

Bahadur-Chhetri gave the police the name of the Maoist who threatened him over

the phone and attacked him, but the police did not even go into the village to

attempt to find the attacker.  Bahadur-Chhetri never filed a police report for the

second attack, given the history of police inaction and corruption in Nepal, as well

as the fact they did not follow up on his first report.  However, that the evidence

might compel a different conclusion on this issue does not matter, because

Bahadur-Chhetri did not demonstrate it was unreasonable to internally relocate.

12

### e. Internal Relocation

Bahadur-Chhetri contends the BIA's assumption that Maoist persecution is not countrywide is contrary to the record and that, as an avowed enemy of the Maoists, he would not be safe anywhere in Nepal, which is now governed by the Maoist Party. He highlights numerous reports in the record showing that Maoists remain a threat to their political opponents and that the Nepali government cannot protect its citizens from the Maoists.

The record does not compel a finding that Bahadur-Chhetri showed that he could not reasonably relocate within Nepal. Bahadur-Chhetri stayed in both Kushma and Kathmandu without experiencing any physical attacks, he was able to peacefully cast his vote for the Nepali Congress Party (NCP) in his home village, and his entire immediate family remained safe in his home village, despite also supporting the NCP. He was only attacked in and around his home village, the letters were sent to his home address, and the threatening phone calls were made to his cellphone—not to any landlines of places he stayed outside his home village. Moreover, the record shows that Bahadur-Chhetri is a low-level campaigner and supporter of the NCP, not a high-ranking official such that it would be reasonable to assume the Maoists would follow him throughout the country. Because the record does not compel a finding that internal relocation is unreasonable, Bahadur-

Chhetri has failed to meet the standard for eligibility for asylum. Accordingly, we deny his petition as to this issue.[5]

## B. CAT Relief

Bahadur-Chhetri argues the BIA clearly erred by finding he failed to prove he would more likely than not be tortured if he returned to Nepal. He contends the IJ did not consider all of the evidence relevant to the possibility of future torture, including the Country Reports or background materials and the brutal beatings inflicted on him by the Maoists. Further, Bahadur-Chhetri asserts the Maoists, who are now a part of the government, have inflicted acts on him specifically intending to cause him physical and mental torture.

The United States has agreed, pursuant to Article 3 of the CAT, not to "expel, extradite, or otherwise effect the involuntary return of any person to a country in which there are substantial grounds for believing the person would be in danger of being subjected to torture." The Foreign Affairs Reform and Restructuring Act of 1998, Pub. L. No. 105-277, § 2242(a), 112 Stat. 2681 (1998). The burden of proof is on the petitioner to establish that it is more likely than not

---

[5] To establish eligibility for withholding of removal, the petitioner must show that, if he returns to his home country, it is more likely than not that he will be persecuted or tortured on account of race, religion, nationality, membership in a particular social group, or political opinion. *Sepulveda*, 401 F.3d at 1232. This standard is significantly higher than the asylum standard, and a petitioner that cannot meet the asylum standard usually cannot meet the standard for withholding of removal. *Al Najjar*, 257 F.3d at 1292-93. As Bahadur-Chhetri failed to meet the standard for eligibility for asylum, he has also failed to meet the more stringent standard for eligibility for withholding of removal. *See id.*

14

that he would be tortured if removed to the proposed country of removal.  8 C.F.R. § 208.16(c)(2).  "[T]o constitute torture, an act must be specifically intended to inflict severe physical or mental pain or suffering."  *Id.* at § 208.18(a)(5).  "An act that results in unanticipated or unintended severity of pain and suffering" does not qualify as torture.  *Id.*  Moreover, to obtain CAT relief, the petitioner must demonstrate that the torture would be inflicted by the government or that the government would acquiesce to the torture by being aware of it and failing to intervene.  *Reyes-Sanchez v. U.S. Att'y Gen.*, 369 F.3d 1239, 1242 (11th Cir. 2004).

Substantial evidence also supports the finding Bahadur-Chhetri was ineligible for CAT relief.  The record does not compel a finding that Bahadur-Chhetri would more likely than not be tortured if he returned to Nepal, and the record also does not compel a finding that the government perpetrated the alleged torture or acquiesced to it.  Additionally, although no clear legal guidelines exist for punishing torturers in Nepal, the Nepal government allows for compensation to victims of torture through the Torture Compensation Act.  Therefore, Bahadur-Chhetri is not eligible for relief under CAT and we deny his petition as to this issue.

## II.  CONCLUSION

Substantial evidence supports the finding that the attacks and threats on Bahadur-Chhetri by members of the Maoist Party were not extreme enough to constitute past persecution.  Further, Bahadur-Chhetri did not exhaust his claim that the Maoists were not private actors, and the IJ and BIA did not err by not explicitly discussing the regulatory factors for the reasonableness of internal relocation.  Moreover, the IJ and the BIA were not required to make explicit findings about his subjective and objective fear because they determined on other grounds that he failed to meet his burden of showing a well-founded fear of future persecution.  Substantial evidence supports the IJ's and BIA's determination that Bahadur-Chhetri failed to meet this burden because, although the record may compel a finding that the government was unable or unwilling to protect him, it does not compel a finding that he was unable to safely and reasonably relocate within Nepal.  Substantial evidence also supports the IJ's and BIA's denial of withholding of removal and CAT relief.  Accordingly, we deny the petition.

**PETITION DENIED.**

16